**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

DONALD HAGANS,

       Plaintiff,

   v.

THE BOARD OF EDUCATION OF RED
CLAY CONSOLIDATED SCHOOL
DISTRICT,

       Defendant.

Civil Action No. 22-1452-RGA

MEMORANDUM OPINION

Raeann Warner (argued), COLLINS PRICE & WARNER, Wilmington, DE,

       Attorney for Plaintiff.

Michael P. Stafford, Elise K. Wolpert (argued), YOUNG CONAWAY STARGATT &
TAYLOR, LLP, Wilmington, DE,

       Attorneys for Defendant.

March _15_, 2024

ANDREWS, UNITED STATES DISTRICT JUDGE:

Before me is Defendant's motion for summary judgment. (D.I. 41). I have considered the parties' briefing (D.I. 42, 45, 48) and Defendant's supplemental letter (D.I. 53). I heard oral argument on February 23, 2024.[1]  For the reasons set forth below, I will DENY Defendant's motion.

## I.   BACKGROUND

Plaintiff began working for the Red Clay Consolidated School District around 1990. (D.I. 42 at 3; D.I. 45 at 3). He held various positions, including temporary custodian, full-time custodian, night lead, and groundskeeper. (D.I. 42 at 3 (citing D.I. 43 at A1–A5)). In 2001, Plaintiff was named Chief Custodian of Baltz Elementary School. (*Id.*; D.I. 45 at 3). Chief Custodians report to Field Supervisors; both of the district's Field Supervisors report to the Manager of Facilities and Maintenance. (D.I. 42 at 3–4).

Richard Martin, a Field Supervisor, retired in 2021, and Plaintiff applied for the resulting opening. (*Id.* at 4).[2]  Plaintiff and various other individuals, including Monte Perrino, interviewed for the role. (*Id.* at 9). The qualifications for the Field Supervisor position include at least five years of experience as Chief Custodian or an equivalent position. (*Id.* at 8; D.I. 45 at 3). Plaintiff applied with about twenty years of experience as Chief Custodian. (D.I. 1 ¶ 3; D.I. 43 at A78). Perrino applied with four years and eight months of experience as Chief Custodian.

---

[1] Citations to the transcript of the argument, which is not yet docketed, are in the format "Hearing Tr. at _____."

[2] At the time, Marcin Michalski was the Manager of Facilities. Matt Hardy was the other Field Supervisor. (D.I. 42 at 4). Martin signed an affidavit after retiring, stating: (1) Hardy said Plaintiff would be the most likely new Field Supervisor hire, and (2) Hardy and Michalski "spoke dismissively" about the possibility of Perrino getting the job. (D.I. 46 at B001).

(D.I. 42 at 18). Prior to that, Perrino spent fourteen years working[3] for the River Park Cooperative, a condominium building. (*Id.* at 8). In that role, Perrino "t[ook] care of the grounds by cutting the grass, maintaining the shrubs, [and] trimming trees around the building, as well as using the snow blower during the winter months." (D.I. 43 at A7). He also "maintain[ed] the building by doing a regimen[] of pre-determined preventative maintenance" and "overs[aw] contractors . . . working in the building for the Co-Op." (*Id.*).

Two panels of interviewers evaluated the candidates. (D.I. 42 at 7). All six interviewers ranked Perrino as the top candidate and Plaintiff as the second-best candidate. (*Id.* at 9). Perrino, who is white, received the position over Plaintiff, who is black. (*Id.*; D.I. 45 at 2). The interviewers cited poor paperwork, poor work performance, negativity, and a lack of computer skills as reasons for not promoting Plaintiff. (D.I. 45 at 4). Plaintiff's annual performance evaluations in the years leading up to the Field Supervisor interviews were positive, but he was reprimanded for various incidents. (D.I. 42 at 4–5).

Plaintiff contends that Defendant discriminated against him on the basis of race when it did not promote him. (*See* D.I. 1 ¶¶ 18–24). Debra Davenport, a HR Education Associate employed by the district, investigated Plaintiff's allegations. (D.I. 45 at 4; D.I. 46 at B029). She completed a report in which she concluded that Perrino should have been excluded from the applicant pool because he did not meet the minimum requirement of five years as Chief Custodian or equivalent. (D.I. 45 at 5). Davenport's report also concludes that the interviewers' reasons for not promoting Plaintiff are inconsistent with his performance evaluations. (D.I. 43 at

---

[3] In its briefing, Defendant refers to the position as being the "operations coordinator," but the only citation is to D.I. 43 at A7, where I do not see that job title or anything like it.

A78).[4]  Davenport testified that she believes race played a role in Plaintiff not being promoted. (*See* D.I. 46 at B040–41).

Perrino was promoted in August 2021.  (*See* D.I. 42 at 9–10).  Plaintiff retired in July 2022, still a Chief Custodian.  (*Id.* at 6; D.I. 45 at 3).  He alleges discrimination under Title VII and the Delaware Discrimination in Employment Act ("DDEA").  (D.I. 1 ¶¶ 18–24).

## II.   LEGAL STANDARD

### A.  Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party has the initial burden of proving the absence of a genuinely disputed material fact relative to the claims in question.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Material facts are those "that could affect the outcome" of the proceeding.  *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011).  "[A] dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party."  *Id.*  The burden on the moving party may be discharged by pointing out to the district court that there is an absence of evidence supporting the non-moving party's case.  *Celotex*, 477 U.S. at 323.

---

[4] Davenport's report summarizes conversations with some of the interviewers.  The report states,

> Mr. Hagans reported Mr. Hardy shared after the interview the position will open up again maybe in March if Mike Volzone retires; he or Monte will probably take the position.  Mr. Hardy stated, "I don't believe that conversation happened.  He says crazy stuff to get you to fall into it.  Try to stay away unless I have to deal with him.  Always throws out the race card."

(D.I. 43 at A78).

The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Williams v. Borough of West Chester*, 891 F.2d 458, 460–61 (3d Cir. 1989). A non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1). The non-moving party's evidence "must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Williams*, 891 F.2d at 460–61.

When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex*, 477 U.S. at 322.

## B. Title VII Discrimination

Absent evidence of direct discriminatory intent, the Court applies the burden-shifting framework articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[5] Under the *McDonnell Douglas* framework, the plaintiff bears the initial burden of making a prima facie showing of discrimination. *See id.* at 802.

---

[5] Evidence of direct discriminatory intent is evidence sufficient to allow the jury to find that "the decision makers placed substantial negative reliance on [race] in reaching their decision." *Fakete v. Aetna, Inc.*, 308 F.3d 335, 338 (3d Cir. 2002) (cleaned up).

To establish a prima facie case of race discrimination, the plaintiff must prove that: (1) he is a member of a protected class; (2) he is qualified for the position at issue; (3) he suffered an adverse action relative to that position; and (4) under circumstances that give rise to an inference of unlawful discrimination. *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410–11 (3d Cir. 1999).[6] "The central focus of the prima facie case is always whether the employer is treating some people less favorably than others because of their race." *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 798 (3d Cir. 2003) (cleaned up).

If the plaintiff succeeds in establishing his prima facie case, the burden shifts to the defendant to proffer a "legitimate, nondiscriminatory" reason for its actions. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). If the defendant meets "its relatively light burden by articulating a legitimate reason for the unfavorable employment decision," the burden of production shifts back to the plaintiff to present evidence from which a reasonable factfinder could infer that the employer's proffered reasons are pretextual. *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994).

To defeat summary judgment at the pretext stage, "the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Id.* at 764. To survive summary judgment, it is not enough for a plaintiff to simply declare that the reasons proffered by the employer were "wrong or mistaken." *See id.* at 764–65. The

---

[6] The same standard applies for Plaintiff's race discrimination claim under the DDEA. *See Hyland v. Smyrna Sch. Dist.*, 608 F. App'x 79, 83 n.5 (3d Cir. 2015) ("[T]he standards under Title VII and the DDEA are generally the same . . . .").

plaintiff must point to evidence demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action[s] that a reasonable factfinder could rationally find them 'unworthy of credence.'" *Id.* at 765.[7]

## III.   DISCUSSION

For the purpose of the present motion, Defendant concedes that Plaintiff can establish a prima facie case of discrimination. (D.I. 42 at 16). Plaintiff does not dispute that Defendant proffered a legitimate, nondiscriminatory reason for promoting Perrino instead of Plaintiff. (*See generally* D.I. 45 at 2, 10–15). I therefore only consider if Plaintiff raises a genuine dispute of material fact as to whether Defendant's reasons are pretextual.

Defendant argues that race did not impact its decision to promote Perrino over Plaintiff. (D.I. 42 at 17). Defendant contends that all six interviewers concluded that Perrino was the best qualified for Field Supervisor. (*Id.*). Defendant points to the interviewers' scoring sheets and contemporaneous interview notes, as well as the reprimands issued to Plaintiff, to support its position. (*Id.*).[8] Defendant contends that the interviewers' reasons were consistent with each other. (*Id.* at 20–21).

---

[7] In addition to the burden-shifting framework, Plaintiff's brief makes references to the mixed-motive framework articulated in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989). (*See* D.I. 45 at 9–12). Defendant contends that "the mixed-motives framework is typically used when instructing juries; the Third Circuit has not stated whether it is also applicable to assessing a claim at summary judgment." (D.I. 48 at 2). Plaintiff's brief limits discussion of the mixed-motive standard to Matt Hardy's comment about Plaintiff playing the "race card." (D.I. 45 at 10–12). Because, as explained below, I do not need to reach the "race card" comment to decide the present motion, I similarly do not need to resolve any disputes about the applicability of the mixed-motive framework.

[8] Defendant contends that the interviewers did not compare candidates' annual evaluations during the hiring process. (D.I. 42 at 19 ("Positive performance evaluations was not one of the criteria listed for Field Supervisor."); *see also* D.I. 48 at 5).

Defendant argues that Davenport's opinion "is not only irrelevant, but also contradicted by the record." (*Id.* at 18; *see also* D.I. 48 at 3–4). Whereas Davenport found that Perrino did not have "supervisory responsibilities," Defendant argues that Perrino's personnel file shows otherwise. (D.I. 42 at 18). Defendant also contends that Davenport "did not create the qualifications, screen the applicants, work in Facilities, or ask Perrino about his past work experience." (*Id.*). Defendant contends that Michalski's decision—that the four years and eight months Perrino spent as Chief Custodian, combined with prior work, satisfied the minimum qualifications for the position—"is entitled to deference." (*Id.* at 18–19).

Defendant further argues that Hardy's comment about Plaintiff playing "the race card" does not show discriminatory animus. (*Id.* at 21; *see also* D.I. 48 at 1–2). Defendant contends this was an isolated comment about Plaintiff avoiding negative feedback. (D.I. 42 at 21–22). Defendant also argues that Hardy's comment cannot constitute evidence of discriminatory animus because Hardy made the comment nearly two months after Plaintiff's final interview for Field Supervisor. (*Id.*).[9]

Plaintiff, relying on Davenport's conclusions, argues that Perrino was unqualified for the Field Supervisor position. (D.I. 45 at 12). Plaintiff contends that "choosing an unqualified non-protected class applicant over a qualified protected class applicant is evidence of pretext sufficient to present the issue to the jury." (*Id.*). Plaintiff also points to Davenport's finding that the interviewers' reasons for not selecting him—negativity, poor work performance, poor paperwork, and lack of computer skills—were not consistent with his "mostly outstanding

---

[9] Defendant further argues that Plaintiff's reliance on two other black employees who were denied promotions in Facilities is insufficient to show pretext through a pattern of discrimination. (D.I. 42 at 23–24).

performance reviews," which were "far superior" to Perrino's reviews. (*Id.* at 13). Plaintiff thus argues that Defendant's reasons for hiring Perrino are weak. (*Id.*).

Plaintiff makes several other arguments about pretext. He contends the record shows that: (1) Hardy "held a racial stereotype towards [P]laintiff at the time he made the decision not to promote [P]laintiff" (*id.* at 11–12); (2) Michalski and Hardy "spoke negatively" about Perrino's work performance, which is inconsistent with promoting Perrino on the basis that he was more qualified (*id.* at 14);[10] and (3) Hardy said Plaintiff was the most likely replacement for Martin, which is also inconsistent with promoting Perrino on the basis that he was more qualified (*id.*). Plaintiff also points to past instances of purported discrimination in Facilities. (*See generally id.* at 6–7, 15). Plaintiff further argues that Defendant improperly relies on "performance problems" that occurred after Perrino was promoted. (*Id.* at 14).

Viewing the evidence in the light most favorable to Plaintiff, there is sufficient evidence from which a jury could conclude that Defendant's reasons for not promoting Plaintiff were pretextual. Davenport, Defendant's human resources investigator, concluded that Perrino "should have been excluded from the pool of applicants" because he "did not meet the five years of Chief experience or equivalent" required for the Field Supervisor position. (D.I. 43 at A78). She testified that "as a practice, people who didn't meet the experience qualifications were excluded from the pool." (D.I. 46 at B037–38). Whereas Plaintiff worked as Chief Custodian for more than nineteen years and supervised others, Davenport found that Perrino did not have supervisory responsibilities when working as a groundskeeper and maintenance worker for a

---

[10] Defendant argues that Martin's affidavit, which describes a conversation between Hardy and Michalski, is inadmissible hearsay. Defendant contends, "Plaintiff does not offer any hearsay exception under which Martin's statement could be properly admitted at trial." (D.I. 48 at 6–7). Defendant argues that even if Martin's affidavit were admissible, it would not be probative of pretext. (*Id.* at 7–8).

condominium building.  (D.I. 43 at A78).  Perrino spent fewer than five years as Chief

Custodian.  (D.I. 42 at 18).  The fact that Defendant calls Davenport's conclusions irrelevant and

incorrect merely creates a factual dispute; it does not require that I grant summary judgment.

Davenport also reasoned that the interviewers' comments about Plaintiff's "negativity;

poor paperwork; poor work performance, and lack of computer skills" were inconsistent with

Plaintiff's evaluations.  (D.I. 43 at A78).  I agree.  Although Defendant contends that positive

performance evaluations were not one of the criteria required for the Field Supervisor position,

Plaintiff's evaluations nevertheless call into question whether the interviewers' reasons for not

promoting Plaintiff were the real reasons.  In the two annual evaluations leading up to Perrino's

promotion, Plaintiff received an "outstanding" rating in eight of the nine categories.  For

instance, he received "outstanding" marks for quality of work, work habits, judgment and

common sense, and supervisory ability.  (D.I. 47 at B077–78).  Plaintiff's 2020 evaluation states,

> Donald is proactive, he plans for long range cleaning/upkeep of the building.  He
> is collaborative with building administration to support events/occur[e]nces at the
> school.  He is a great asset at Baltz and his leadership is greatly appreciated.

(*Id.* at B077).  His 2021 evaluation states,

> Donald Hagans is a task master.  He plans for necessary tasks/upcoming events ie
> summer moves, assemblies, improving building spaces.  He collaborates with
> building admin daily and always has strong recommendations about how to best
> configure spaces/materials for smooth function of the building.  He is a HIGHLY
> valued member of the Baltz team.

(*Id.* at B078).  At oral argument, Defendant argued that performance evaluations "held very little

weight" because they were prepared by building principals, who considered different factors than

Field Supervisors.  Defendant argued that reprimands, which are prepared by Field Supervisors,

are "more accurate" than annual evaluations.  (*See* Hearing Tr. at 10:1–18, 12:8–19).  Although

Defendant's line of reasoning is plausible, Defendant has not cited the record in support of these

arguments. The annual evaluations, along with Davenport's conclusions about Perrino's qualifications, including that he lacked the minimum stated requirement of five years in a "Chief Custodian position or equivalent," could lead a jury to conclude that Plaintiff has shown weaknesses and contradictions in Defendant's proffered reasons for not promoting him.

Because the evidence raises a genuine dispute of material fact as to Defendant's real reasons for not promoting Plaintiff to Field Supervisor, I deny Defendant's motion for summary judgment.[11]

## IV.   CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment (D.I. 41) is DENIED. An appropriate order will issue.

---

[11] Because the evidence about Perrino's qualifications, Plaintiff's performance evaluations, Davenport's conclusions, and the interviewers' stated reasons for not selecting Plaintiff is sufficient to raise a factual dispute for the jury, I do not need to reach the parties' arguments about hearsay, the "race card" comment, or purported patterns of discrimination.